IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| TATE JOHNSON, | ) |
| | ) |
| Respondent. | ) |

**UNITED STATES' REPLY**

The United States has established that the summonses[1] issued to Tate Johnson (the "Respondent"), the president and taxpayer representative of Brook-Hollow Financial LLC and Brook-Hollow Capital LLC (the "companies"), are valid and enforceable. Respondent has failed to meet its heavy burden that the IRS is acting in bad faith or that the summonses are unenforceable. Accordingly, the summonses should be enforced.

## I.  Background

The IRS is investigating the companies as a possible promoter of an abusive deferred legal fee tax shelter, plan, or arrangement. In 2024, the IRS "launched an examination campaign to address a tax deferral transaction where taxpayers, specifically

---

[1] The Brook-Hollow Financial LLC summons (Ex. 2) was inadvertently omitted from the United States' filing and is attached here for the Court's consideration.

plaintiff's attorneys or law firms, fail to report legal fees earned from representing clients in litigation on a contingency fee basis."[2]

In a 2024 announcement, the IRS explained how these abusive transactions work and why the IRS is investigating them:

> Plaintiff's attorneys or law firms representing clients in lawsuits on a contingency fee basis may receive as much as 40% of the settlement amount that they then defer by entering an arrangement with a third party unrelated to the litigation, who then may distribute to the taxpayer in the future; generally, 20 years or more from the date of the settlement.

> The taxpayer fails to report the deferred contingency fees as income at the time the case is settled or when the funds are transferred to the third party. Instead, the taxpayer defers recognition of the income until the third party distributes the fees under the arrangement.

> The goal of this newly launched campaign is to ensure taxpayer compliance and consistent treatment of similarly situated taxpayers which requires the contingency fees be included in taxable income in the year the funds are transferred to the third party.[3]

As part of this newly launched campaign into abusive deferred legal fee arrangements, the IRS is conducting a promoter-investigation of the companies under Section 6700 of the Internal Revenue Code. Section 6700 imposes penalties for, among other things, organizing, marketing, selling, or promoting abusive tax shelters, and making false or fraudulent statements about tax benefits. A penalty may be assessed for each separate transaction, or for separate activities, related to each entity or arrangement

---

[2] "IRS announces launch of new enforcement campaign; highlights importance of whistleblowers and proper disclosure statements," https://www.irs.gov/newsroom/irs-announces-launch-of-new-enforcement-campaign-highlights-importance-of-whistleblowers-and-proper-disclosure-statements.
[3] *Id.*

involved. See, e.g., 26 U.S.C. § 6700(a)(2) ("activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity").

By failing to comply with the summonses, Respondent is delaying a proper investigation into the companies' deferred legal fee program. Since May 2023, the IRS has attempted to obtain documents from Respondent. Respondent has been unwilling to provide the IRS with any documents unless the IRS drastically reduces the scope of documents requested. The IRS is unwilling to do so, however, because such scope reduction would defeat the IRS's ability to conduct a thorough 6700 penalty investigation.

As part of its investigation, the IRS sent to Respondent four Information Document Requests ("IDRs") requesting documents. Dkt. 10 at 3. After Respondent only partially responded,[4] the IRS issued the summonses. Dkt. 10 at 3. When this action was filed, the parties attempted to resolve this issue without court involvement. Dkt. 5. Despite their good-faith efforts, the parties were unable to reach agreement.

---

[4] Respondent's claim that it produced documents responsive to the IDRs or documents responsive to the summonses is misleading. Dkt. 10 at 11. Respondent's production in response to the IDRs was picayune at best. Many of the documents Respondent claims to have provided were not actually provided in the manner that the IRS requested. For example, the IRS requested that all documents be provided in native format and included production specifications. Instead, Respondent gave the IRS a pdf print of a balance sheet and financial statements claiming that those were their accounting books and records. But these are not in fact Respondent's accounting books & records. The companies keep their records in QuickBooks, so to comply with that request, they would need to provide the actual QuickBooks data files. Instead, they provided the IRS with a single, large pdf file for each entity. The files contain some piece-meal documents, generic pro-forma example contracts (not actual contracts), pdf prints of what appear to have been excel files, and other items. Thus, while some documents were produced, the documents produced were vastly incomplete and inadequate.

The IRS does not possess the summonsed documents. By necessity, the IRS issued summonses to the Respondent, as president of the corporations and as the taxpayer representative, seeking documents that may be relevant to determining whether the companies are liable for civil penalties. Respondent's refusal to comply prevents the IRS from conducting a lawful investigation into the companies' conduct.

## II. Argument

### A. The United States Established the Powell Factors and the Court Should Enforce the Summonses.

To enforce a summons, the United States must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006). The burden on Respondent to contest the government's prima facie case is "'a heavy one,' requiring allegations of specific facts and introduction of evidence." *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) (internal citation omitted). Because Respondent cannot meet its heavy burden, the summonses should be enforced.

### 1. The summonses were issued for a legitimate purpose.

The IRS can issue a summons to investigate "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)). "The IRS'

4

power to investigate under section 7602 is "'broad' and 'expansive.'" *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984); *United States v. Euge*, 444 U.S. 707, 715 n. 9 (1980). "[I]t would be naive to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable." *United States v. Bisceglia*, 420 U.S. 141, 145-146 (1975). Thus, Section 7601 gives the Internal Revenue Service a broad mandate to investigate and audit "persons who may be liable" for taxes. In turn, Section 7602 allows the IRS to "examine any books, papers, records, or other data which may be relevant ... [and to summon] any person having possession ... of books of account ... relevant or material to such inquiry...."

The summonses here seek specific documents related to the companies' deferred legal fee program. Respondent admits that the companies offer such programs. Dkt. 10 at 3. While Respondent asserts that the deferred legal fee program complies with the internal revenue laws, *id.*, that issue is not before the Court. The IRS is permitted to issue a summons to broadly inquire into the companies' activities, and Section 7602 "authorizes the Secretary or his delegate 'to fish,'" *United States v. Luther*, 481 F.2d 429, 432-33 (9th Cir. 1973); *United States v. Giordano*, 419 F.2d 564, 568 (8th Cir. 1969), for items related to "any offense connected with the administration or enforcement of the internal revenue laws." *See* 26 U.S.C. § 7602; *Euge*, 444 U.S. at 710-11 and n. 3 and 4. The legitimate purposes standard is satisfied.

2.      **The summonses seek information relevant to that purpose.**

Summonsed documents are relevant if they might "throw[] light upon" the tax matter under investigation. *Arthur Young & Co.*, 465 U.S. at 814. The government's

burden "is light." *Azis v. I.R.S.*, 522 F. App'x 770, 775 (11th Cir. 2013). The IRS is primarily investigating whether the companies are liable for organizing or selling abusive tax shelters related to its deferred legal fee arrangement. The summonsed documents relate to the companies' tax arrangement and its actions and statements made in connection with that arrangement. The documents are thus relevant because they may "throw light" on whether civil penalties are appropriate. *See Arthur Young & Co.*, 465 U.S. at 814-815. District courts should be "slow to erect barriers to enforcement of IRS summonses where the summonses are being used to further the IRS mission of effectively investigating taxpayer liabilities." *Robert v. United States*, 364 F.3d 988, 996 (8th Cir. 2004).

"The standard for relevance" for a summons is minimal and lower than "the relevance standards used in deciding whether to admit evidence in federal court." *Arthur Young*, 465 U.S. at 814. Congress intended "to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility." *Id.* This is because the IRS "can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized." *Id.*

As such, the IRS must examine the companies' documents regarding, among other things, its organization, management, pricing, and financials. Other aspects of the deferred legal fee arrangements are likely to be found in emails among the organizers, and to and from its customers.

As an example, the companies may violate Section 6700 when organizing its arrangement or when marketing and selling its arrangement to potential customers. *See*

*United States v. Raymond*, 78 F. Supp. 2d 856, 881 (E.D. Wis. 1999), *aff'd*, 228 F.3d 804 (7th Cir. 2000). Promotional materials and statements to customers regarding the alleged tax benefits of the arrangement are most likely to be reflected in promotional materials and email communications. The companies' internal communications and patterns of conduct throughout the life of its program, again likely contained in emails, may reveal other evidence of Section 6700 violations.

Moreover, the companies' overtures to customers or prospective customers—or responses to its customers regarding the IRS's enforcement initiative—may demonstrate an awareness that the companies are violating the law. *See Est. of Reiserer v. United States*, 229 F.R.D. 172, 180 (W.D. Wash. 2005) (evidence related to actual and potential clients was relevant because it could establish violations of §§ 6700 and 6701), *aff'd sub nom. Reiserer v. United States*, 479 F.3d 1160 (9th Cir. 2007). A wide variety of documents relating to the companies' conduct "might throw light upon" whether they are liable for penalties. The summonses cast a necessarily wide net by seeking numerous documents related to the companies' business.

### 3. The summonsed documents are not in the IRS's possession.

Revenue Agent Walker's declaration establishes that the summonsed documents are not in the IRS's possession. On October 16, 2023, Brook-Hollow Capital produced 114 pages of documents and Brook-Hollow Financial produced 1173 pages of documents in response to IDRs 1, 2 and 4. The responses included financial statements, generic marketing materials, and template deal documents. The IRS determined that the October 16th responses were incomplete because they did not include any client specific

transaction documents or information and thus did not comply with the IDRs' requested production specifications. As a result, the IRS served the summonses seeking the missing information. Accordingly, while Respondent has produced some documents to the IRS in response to IDRs, Respondent has not produced the summoned documents.

### 4. The IRS satisfied all administrative steps required by the Internal Revenue Code.

Revenue Agent Walker's declaration establishes that the IRS satisfied all administrative steps. Under 26 U.S.C. § 7602, Revenue Agent Walker issued the summonses, and copies were served on Respondent under 26 U.S.C. § 7603. There is no Justice Department Referral in effect to Respondent under 26 U.S.C. § 7602(d)(1). The required administrative steps have been met.

### 5. Respondent has not met its "heavy burden" of showing that the IRS has acted in bad faith.

#### a. The court has subject-matter jurisdiction.

Respondent first suggests, with no case support, that the Court somehow lacks jurisdiction because of this case named Respondent, not Respondent as the taxpayer representative of the companies, as a party.[5] Dkt. 10 at 13. As a threshold matter, the Court need not address this argument because it has not been properly noticed or briefed under Fed. R. Civ. P. 12.

---

[5] If the Court deems it necessary, the United States would agree to an amendment under Fed. R. Civ. P. 15 to amend the case caption to clarify that Respondent is named in his capacity as the taxpayer representative. An amendment changing the party against whom a claim is asserted, whether to correct a misnomer or otherwise, relates back to the date of the original pleading. *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248-49 (6th Cir. 2000).

A district court has subject-matter jurisdiction over summons-enforcement cases under 26 U.S.C. § 7402(a) and 7604 and 28 U.S.C. § 1345. Section 7402(b) states:

> .... If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
> 26 U.S.C. § 7402(b).

Similarly, section 7604 provides:

> .... If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

Here, Respondent was summoned under the internal revenue law to appear in this district to produce records. The Court thus has subject-matter jurisdiction. Moreover, because Respondent resides in this district and was personally served, this Court also has jurisdiction. *United States v. Sneeky Theef Records, Inc.*, 526 F. Supp. 434, 437 (N.D.N.Y. 1981) ("[J]urisdiction for enforcement of an IRS summons is clearly given to the district court where the taxpayer is found or where he resides."). This Court thus has jurisdiction to compel Respondent to produce the summonsed documents.

Respondent intimates that jurisdictional confusion has somehow been created because the IRS named Respondent in his capacity as a taxpayer representative while caption of this suit does not expressly state the same. This contention lacks merit. The Court is to consider not whether the case was captioned properly, but whether *the summonses should be enforced*. These are directed to Respondent as the president and

9

taxpayer representative of both companies. Dkt. 4, Exs. 1 and 2.   Accordingly, the summonses were properly served under 26 U.S.C.A. § 7602(a)(2) (service on officer or employee). Thus, the Court has jurisdiction. *See, e.g.*, *United States v. Rose, in her capacity as President of White Rhino Corporation*, 437 F. Supp. 2d 1166 (S.D. Cal. 2006) (enforcing summons to former president and sole shareholder of corporation in relation to IRS's investigation of corporation's tax liabilities).

### b. The Information Documents Requests ("IDRs") Issued by the IRS are Irrelevant.

Respondent devotes a substantial portion of its objection to discussing the Information Document Requests ("IDRs") that the IRS issued to it before issuing the summons, asserting that this somehow shows the IRS is acting in bad faith. Dkt. 10 at 4 But this is irrelevant in considering whether the summonses should be enforced. There is no law that an IDR be issued before a summons, or that a recalcitrant party be given months to respond to an IDR before a summons is issued. *See Ironwood Trading, LLC v. United States*, 2008 WL 817066, at *6 (M.D. Fla. Mar. 25, 2008) ("the claimed administrative deficiencies [including regarding IDRs and not first seeking documents 'voluntarily' from a party] do not affect the validity of the Summonses."). As discussed above, the IRS issued the summonses to Respondent because the Respondent only produced a few of the documents that the IRS previously requested from it through IDRs. Unlike IDRs, summonses can be enforced by a district court, and the production of the requested information can then be enforced using the court's contempt powers. *See* 26 U.S.C. § 7604. Respondent's sole purpose in discussing the IDRs appears to be to

convince the Court that its failure to produce requested documents to the IRS somehow shows that the *IRS* acted in bad faith.

Respondent repeats this canard by falsely stating that after requesting a continuance so the parties could attempt to resolve this matter without court involvement, "DOJ summarily declined to have any substantive conversation about [Respondent's] proposal." Dkt. 10 at 5. Respondent does not set forth any factual basis for this assertion, and there is none. Government counsel forwarded Respondent's proposal to the IRS, discussed the issues raised with the IRS, and presented the United States' position to Respondent's counsel by telephone. The United States engaged in a good-faith effort to resolve these issues without court involvement. Respondent has not produced any documents since this action has been filed, suggesting the true purpose here is further delay.

Respondent also suggests that the IRS is engaged in a bad-faith investigation because deferred fee arrangements, regardless of the facts, are somehow blessed in perpetuity under the Eleventh Circuit's 1996 opinion in *Childs v. Commissioner*, 103 T.C. 634 (1994), *aff'd*, 89 F.3d 856 (11th Cir. 1996) (unpublished).Respondent also claims, without support, that the IRS is somehow trying to "eliminate" the "deferred legal fee industry." Dkt. 10 at 4.

"[T]hose opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination" and "this burden is a heavy one." *United States v. LaSalle Nat. Bank*, 437 U.S. 298, 316 (1978) (emphasis added). A court must look at the "institutional posture" of the IRS. *Id.* at 316.The party opposing the

11

summons must disprove the actual existence of a valid purpose by the IRS in issuing the summons. "After all, the purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602 by issuing the summons." *Id.* The taxpayer cannot meet this burden by making mere conclusory allegations without specific facts showing an improper purpose. *Id.*

Respondent's briefing shows that deferred legal fee arrangements have been under IRS scrutiny since at least 2022, the IRS has recently issued a public notice about the potential illegal nature of these arrangements, and that the IRS is aggressively investigating the same. Dkt. 10 at 6. The "institutional posture"[6] of the IRS is thus clear: to investigate these potentially abusive arrangements. The IRS cannot be deemed to be acting in bad faith when it is fulfilling its duty to ensure that the tax laws are lawfully executed. Respondent has also failed to set forth any facts or legal arguments establishing that its arrangement is *identical* to the one addressed in *Childs,* and not like the ones that caused the IRS to launch its nationwide investigation. Moreover, *Childs* was an income-tax case, addressing whether the deferred fee arrangement in that case was proper, and did not involve, as here, a Section 6700 investigation into a suspected tax-shelter promoter. In short, the IRS cannot be deemed to be acting in bad faith by the mere fact of investigating the companies, which Respondent admits market deferred legal fee arrangements.

12

The summons is thus consistent with the IRS's institutional posture to investigate such arrangements. This is not a unique situation, and the summons is not novel in what it seeks. The summons was issued in good faith and the Respondent's unsupported allegations to the contrary do not meet its heavy burden.

6.        **The summons is not overbroad or burdensome.**

Respondent next argues that the summonses are overly broad or unduly burdensome. Summonses that are definite in nature and finite in scope, and that request only information that may be relevant to the IRS's inquiry, as here, consistently have been enforced against challenges for overbreadth. An IRS summons is only overbroad if it "does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *See United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993).

The summons identifies specific categories of documents that it seeks over a defined time (January 1, 2016 through the date of full compliance). United States' Exhibits 1 and 2.  Respondent argues that the summonses are somehow vague because the "date of full compliance" is not expressly defined. But the "date of compliance" is not vague. In fact, it is crystal clear: Respondent has a continuing duty to produce documents until in full compliance with the summonses.

We recognize that a "date of compliance" is different, for example, than a date certain under a request for documents under Fed. R. Civ. P. 34. But this is a summons-enforcement proceeding regarding a promoter investigation, not a civil case in federal

13

court. Due to the potential harm caused to the fisc by such promotions, the scope of production is accordingly broader than in an ordinary civil tax case.

The "date of compliance" period reflected in the summonses is appropriate in promoter investigations. While not legally binding on this Court, the Internal Revenue Manual sets forth the IRS's "institutional posture" in promoter investigations. The Internal Revenue Manual specifically provides that for summonses related to promoter investigations, "[t]he periods on the summons form should say 'From January 1, [year] through date of compliance with this summons.'" I.R.M. § 4.32.2.8.5 (06-04-2018). Setting a defined cut-off date, such as the date the summons is served, would create administrative burdens for IRS and potentially deprive it of relevant information, as new responsive documents may be created while the summons response is being prepared. Furthermore, contrary to Respondent's assertions, the summonses do not impose an indefinite production obligation. The obligation to produce documents runs only until the "date of compliance," not indefinitely. Respondent can stop the ticking clock by producing documents.

Accordingly, Respondent's arguments that the summonses impose an indefinite production obligation are without merit. The sole case it relies on is not controlling and involved income tax, not a promoter investigation. The summonses properly set the time-period for document production through the "date of compliance" in accordance with the IRM procedures for summonses related to promoter investigations.

Respondent next objects on the grounds that production would be costly. Dkt. 10 at 15-16. It is well-established, however, that enforcement of a summons seeking relevant

14

records will not be denied merely because the summons seeks production of (or a search through) a great many records, or will result in significant expenditure of the recordkeeper's time and money. *See United States v. Judicial Watch, Inc.*, 371 F.3d 824, 832 (D.C. Cir. 2004); *Luther*, 481 F.2d at 433 ("The fact that the records called for were extensive is not material."); *United States v. Moore, Ingram, Johnson & Steele*, 2020 WL 7766376, at *4 (N.D. Ga. 2020) ("a summons is not overbroad simply because a complete response would be voluminous and difficult …"). Moreover, several circuit courts of appeals have found that high volume does not in itself constitute overbreadth.[7] *See Adamowicz v. United States*, 531 F.3d 151, 158 (2d Cir. 2008); *Spell v. United States*, 907 F.2d 36, 39 (4th Cir. 1990); *Luther*, 481 F.2d at 433. Indeed, Respondent has cited no controlling legal authority—or any authority—for the proposition that a suspected promoter of a tax shelter can defeat a summons merely because of estimated compliance costs.

Even if the Court had such authority, Respondent has provided no facts from which this Court could make such a conclusion. Respondent assets, with no evidentiary support such as financial statements, that the required production is "unaffordable" for "small" company (whatever that means).[8] Dkt. 10 at 15-16. Moreover, the Supreme Court has rejected a requirement that "the IRS must conduct its investigations in the least intrusive way possible." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323

---

[7] *See Adamowicz*, 531 F.3d at 158; *Spell*, 907 F.2d at 39; *Luther*, 481 F.2d at 433.
[8] Respondent has not produced adequate financial statements, so neither the United States nor the Court is able to evaluate this issue even if it were properly before the Court.

15

(1985). What is more, in attempting to dictate the search terms for emails, Respondent "is effectively arguing that the IRS must follow (Respondent's) preferred investigatory methods. There is no authority justifying that stance." *United States v. Eaton Corp.*, 2024 WL 2216204 (N.D. Ohio May 16, 2024). To do so would put the fox in the chicken coop, letting the party under investigation for suspected operation of an illegal tax scheme determine what gets produced to the IRS.

As noted above, the summons need only provide sufficient specificity to permit a party to respond adequately to the summons. Here, the summonses specify the subject matter of the documents requested, the source of those documents and the limited time period from which the documents are to be drawn. It lists numerous forms of documentation related to Respondent's deferred legal fee practice. And it specifically defines several important terms that cabin the scope of its document requests. In short, the summons is not overbroad or burdensome.

Respondent nevertheless asserts that the summonses are not sufficiently specific to permit an adequate response. Respondent argues that many of the requests are worded so broadly that they do not provide sufficient guidance which documents are, or are not, responsive. As an example, Respondent suggests that wording of the summonses prevents it from producing any tax opinions the companies rely on in marking this program. Dkt. 10 at 15. The more likely reason is that Respondent does not want to produce these tax opinions (or reveal it has none).

All of Respondent's arguments suggesting that the summonses are vague, unduly burdensome, or overbroad are thus meritless. The summonses provide enough detail for

16

Respondent to discern what documents are responsive to the requests. Furthermore, in an instructive case, *United States v. Medlin,* 986 F.2d 463 (11th Cir. 1993). the Eleventh Circuit rejected a similar argument. In *Medlin*, the taxpayer argued that the "relating to" and "to include but not be limited to the following" language in the summonses could be read either to inject ambiguity into which documents are sought or to require him to produce all of the records of the corporations for the four years specified, regardless of their relevance. The court rejected the taxpayer's position, affirming the district court's finding that the summons provided sufficient information such that the taxpayer was not required to blindly guess at what he must produce and that the summons was not overly broad.

Here, the summonses clearly identify the entities whose documents are sought (i.e., Brook-Hollow Capital and Brook-Hollow Financial); the subject matter of the documents sought (i.e., the deferred legal fee programs); and the relevant time period (i.e., January 1, 2016 until the date of compliance). The summonses use the phrase "includes but is not limited to" not to create ambiguity, but because the IRS does not know how the companies title their documents and records. Simply put, Respondent is in the best position to determine what documents are or are not responsive.

7.      **There is No Basis for Modifying the Summons**

Finally, Respondent asserts that because the summonses are vague and overbroad, the Court should invalidate the summonses and require the parties to confer on a more reasonable production. For the reasons set forth above, there is no merit to Respondent's contention that the summonses are vague or overbroad. Respondent's request to confer is

simply another tactic to further delay or narrow production. Accordingly, Respondent's request should be denied and the summonses be enforced.

Dated: January 16, 2025

DAVID A. HUBBERT
Deputy Assistant Attorney General


s/Michael R. Pahl
Michael R. Pahl, MN Bar. #0234539
Trial Attorney, Tax Division
U.S. Department of Justice
1275 First Street NE
Suite 10612
Washington, D.C. 20002
michael.r.pahl@usdoj.gov

Attorney for the United States

18