IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-mc-00013-SJD-SKB |
| | ) | |
| TATE JOHNSON, | ) | |
| | ) | |
| Respondent. | ) | |

**SECOND DECLARATION OF REVENUE AGENT ELIZABETH A. WALKER**

I, Elizabeth A. Walker, declare:

1. I am a duly commissioned revenue agent employed in Large Business and International, Pass-Through Entities Practice Area, Internal Revenue Service. I am authorized to issue IRS summonses.

2. As a revenue agent, I am investigating whether Brook-Hollow Capital LLC and Brook-Hollow Financial LLC (for both of which Tate Johnson is president and Partnership Representative) are liable for penalties under 26 U.S.C. § 6700 in connection with law firm fee arrangements that they promoted, organized, and/or sold from January 1, 2016 to the present. Section 6700 of the Internal Revenue Code imposes penalties for, among other things, organizing or promoting abusive tax shelters. A penalty may be assessed for each separate tax return, or transaction, or for separate activities, related to each entity or arrangement involved. *See, e.g.*, 26 U.S.C. § 6700(a)(2) ("activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity").

3. Based on the investigation to date, the IRS understands that Brook-Hollow (collectively) offers deferred legal fee programs that purport to defer the receipt of a law firm's fees, payable out of a settlement amount negotiated by the law firm on behalf of its client. Brook-Hollow Financial receives fees for structuring the transactions and arrangements equal to one to three percent of the deferred legal fees. Brook-Hollow Capital allows loans to the clients up to 97% of the deferred legal fees. Among the outstanding questions are whether this transaction unlawfully defers or shields attorney income from taxation.

4. On August 4, 2023, I issued Information Document Requests (IDRs) to Brook-Hollow Capital LLC and Brook-Hollow Financial LLC as part of the investigation described above. These IDRs requested that Brook-Hollow Capital LLC and Brook-Hollow Financial LLC produce specific categories of documents on October 15, 2023, and another category of documents on December 29, 2023.

5. On October 16, 2023, Brook-Hollow Capital LLC produced 114 pages of documents and Brook-Hollow Financial LLC produced 1,173 pages of documents. The documents produced were primarily financial documents, template forms, and generic marketing materials. None of the documents pertained to any specific transactions involving Brook-Hollow's clients. These documents were produced in non-native formats (such as Word documents and Excel spreadsheets converted to .pdf) and combined into 2 .pdf files, one containing the documents from Brook-Hollow Capital LLC, and the other containing the documents from Brook-Hollow Financial LLC. I and other IRS employees had several telephone calls after September 22, 2023, with counsel for Brook-Hollow Capital LLC

and Brook-Hollow Financial LLC, but Brook-Hollow Capital LLC and Brook-Hollow Financial LLC refused to produce any additional documents other than those identified in this paragraph. The IRS then made the determination to issue summonses to obtain the records of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC.

6. In furtherance of the above investigation and in accordance with 26 U.S.C. § 7602, on March 27, 2024, I issued Internal Revenue Service summonses addressed to Tate Johnson, as Partnership Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, to appear before me on April 19, 2024, at 9:00 a.m., and produce for examination books, papers, records, or other data as described in the summonses. True and correct copies of the summonses are attached to this Declaration as Exhibits 1 and 2.
7. Tate Johnson is also the president of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC and in his roles as president and Personal Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, Johnson is expected to have possession, custody, or control of records of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC.
8. Tate Johnson resides in Liberty Township, Ohio and was required to produce the summoned documents in Cincinnati, Ohio.
9. In accordance with 26 U.S.C. § 7603, on April 2, 2024, I served attested copies of the summonses on Tate Johnson by handing a copy of the summonses to him. Service of the summonses is evidenced on the certificate of service on the summonses.

10. Tate Johnson, as president and Partnership Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, did not appear or produce any documents in response to the summonses.
11. To date, Tate Johnson, as president and Partnership Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, has failed to comply with the summons.
12. The books, papers, records, or other data sought by the summonses are not already in the possession of the Internal Revenue Service.
13. All administrative steps required by the Internal Revenue Code for the issuance of a summons have been taken.
14. As attested to in the Supplemental Declaration of Revenue Agent Clarice Weinerth filed in this case as ECF No. 17, no Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to Brook-Hollow Capital LLC and Brook-Hollow Financial LLC for the years under investigation.
15. The summonsed documents are relevant to my investigation to determine whether Brook-Hollow Capital LLC and Brook-Hollow Financial LLC (for both of which Tate Johnson is the president and Partnership Representative) may be liable for penalties under 26 U.S.C. § 6700 in connection with the law firm fee arrangements that they promoted, organized, and/or sold from January 1, 2016 to the present.
16. Tate Johnson, as president and Partnership Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, may be in possession and control of books, records,

papers, and other data that may be relevant to the investigation described above, including but not limited to:

a. documents, including records of communications (whether written, electronic, and oral), related to marketing, promoting, explaining, or describing the plan or arrangement;

b. marketing and promotional materials, including video and audio presentations;

c. documents that make (or cause another person to make) statements concerning the allowability of any tax deduction, the excludability of income, or any other tax benefit;

d. contracts, agreements, and correspondence with customers and records of payments from customers related to the plan or arrangement;

e. engagement letters, contracts, and agreements with third-parties pertaining to the plan or arrangement;

f. copies of presentations or manuals regarding the plan or arrangement;

g. contracts, agreements, and engagement letters between respondent and customers who purchased or entered into agreements as part of the plan or arrangement;

h. contracts, agreements, and correspondence between respondent and individuals or entities who referred customers to participate in the plan or arrangement and who may have promoted or sold, or assisted in promoting or selling, the plan or arrangement;

i. tax, actuarial, and legal opinions related to the tax arrangement;

j. documents identifying customers of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC.

k. documents related to the formation of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC, to determine the business purpose of the company; the dates that the business operated; and the scope of its activities organizing, marketing, promoting, and selling its plan or arrangement; and

l. financial records of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC relevant to determining the income it received in connection with organizing, marketing, promoting, or selling a plan or arrangement, which is necessary to determine the amount of any possible penalty.

17. Following the January 24, 2025 hearing held in this case, the IRS agreed to narrow the scope of the records of communication sought by the summonses in requests 21 and 22 (on page 7 of the United States' Notice of Narrowed Summons, ECF No. 19 in this case) to seek communications or records of communications sent and received by the following 27 individuals identified as persons a through aa:

a. John Allen

b. Chanel Bailey

c. Laura Belles

d. Adrienne Carter

e. Ashley Chambers

f. Wylie Eitscheid Jr.

g. BJ Etscheid

h. Masha Geeza

i. Brian Hague

j. Mitchell Hamline

k. Kye Hemphill

l. Joe Hogan

m. Marc J. Bern

n. Daniel J. McCarthy

o. Tate Johnson

p. Dan McCartney

q. Brian Michaels

r. Magen Morris

s. Paul Napoli

t. Kevin O'Reilly

u. Christopher Princis

v. Judith Prindable

w. Tom Prindable

x. Joe Pupel

y. Robert R. Pederson

z. Dominique Rogers

aa. Kristen Teston

18. This Declaration was prepared to add information regarding the IRS's investigation, including the pre-summons IDRs, and to clarify any ambiguities regarding Tate Johnson's role as president and Partnership Representative of Brook-Hollow Capital LLC and Brook-Hollow Financial LLC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 12, 2025

E.A. Walker
Digitally signed by Elizabeth A. Walker
Date: 2025.06.12 14:02:59 -05'00'

Elizabeth A. Walker
Revenue Agent