UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

          Petitioner,                          Case No. 1:24-mc-13

v.

                                                Dlott, J.

TATE JOHNSON,                        Bowman, M.J.

          Defendant.

**ORDER**

This case is currently before the court on the United States Petition to Enforce IRS Summonses and the parties' responsive memoranda. (Docs. 19, 20, 21, 22, 24, 25).

**I. Background and Facts**

The Internal Revenue Service is investigating whether Brook-Hollow Capital LLC and Brook-Hollow Financial LLC (collectively "Brook-Hollow") may be liable for civil penalties pursuant to 26 U.S.C. § 6700 for organizing or promoting abusive tax shelters. (Second Declaration of Revenue Agent Elizabeth Walker (Doc. 24,. Ex. 1, "Second Walker Decl.") ¶ 2).  Based on the investigation to date, the IRS understands that Brook-Hollow offers deferred legal fee programs that purport to defer the receipt of a law firm's fees, payable out of a settlement amount negotiated by the law firm on behalf of its client.

On August 4, 2023, the IRS first issued Information Document Requests (IDRs) to Brook-Hollow as part of its investigation. These IDRs requested the production of specific categories of documents on October 15, 2023, and December 29, 2023. (Id. ¶

4). On October 16, 2023, Brook-Hollow Capital LLC produced 114 pages of documents and Brook-Hollow Financial LLC produced 1,173 pages of documents, primarily financial documents, sample or template forms, and generic marketing materials. (Id. ¶ 5. See also Doc.12 at 11).

However, according to the IRS, none of the documents pertained to any specific transactions involving or identifying Brook-Hollow's clients. As such, on March 27, 2024, the IRS issued the summonses that are the subject of this action. (Id. ¶¶ 5-6.).  The summonses sought documents and records relating to Brook-Hollow's deferred fee programs, including documents concerning particular transactions and clients. The summonses required production on April 19, 2024. Brook-Hollow did not respond to the summonses.

Thereafter, the United States filed this summons enforcement action on October 4, 2024. (Doc. 1.) The Court held a hearing on January 24, 2025, and directed the parties to confer in an effort to narrow the summonses and resolve or at least focus their disputes. (Doc. 15).

Following the hearing, counsel discussed potential limitations to the summonses. The United States thereafter filed a "Notice of Narrowed Summonses," setting forth the limitations it was willing to accept. Respondent proposed additional limitations and requested that the Court either decline to enforce the summonses altogether or, in the alternative, enforce them only as further narrowed, with a reasonable production schedule and certain findings regarding the interpretation of particular requests.

On February 20, 2025, Petitioner provided to Respondent a proposed Notice of Narrowed Summonses along with a proposed stipulation clarifying the parties'

2

agreement. (Doc. 21 at 1). Petitioner's position is that these documents constituted a reasonable reflection of agreements reached verbally at the parties' conference on January 24, 2025.  Id. at 1-2

On March 26, 2025, Respondent proposed to Petitioner a revised Notice of Narrowed Summonses along with a revised stipulation (including a statement of facts to correct what Respondent believes are inconsistencies in the pleadings) and a proposed Order for this Court to implement the parties' agreement. Id. at 2.  Respondent's position is that these documents constituted a more complete reflection of the agreements reached verbally at the parties' conference on January 24, 2025, and a more readily-enforceable conclusion to these proceedings.  Id.

On April 4, 2025, Petitioner's counsel informed Respondent's counsel that Petitioner intends to file a "modified summons" on April 7, 2025, arguing that Respondent's proposed modifications went beyond the parties' agreement at the summons-enforcement hearing and appeared to be an attempt to re-write the summonses for Respondent's benefit.  Id. at 2.

Thereafter, Petitioner filed a Notice of Narrowed Summonses on ECF on April 7, 2025.  (Doc. 19).

**II. Analysis**

*A.  Applicable Law*

The IRS is authorized to issue summonses under 26 U.S.C. § 7602 to determine the correctness of any return, to make a return where none has been made, to determine tax liability, or to collect such liability. Summonses are not self-enforcing; the government must seek judicial enforcement under 26 U.S.C. §§ 7402(b) and 7604(a).

To compel a person or entity to comply with a summons, the government must seek enforcement in federal district court.

To obtain an order enforcing a summons, the government must make a *prima facie* case showing that it is valid. To satisfy its burden, the government must demonstrate that: (1) the summons was issued for a legitimate purpose, (2) the summons seeks information that may be relevant to that purpose, (3) that the summons seeks information not already within the IRS's possession, and (4) that all administrative steps required by the Internal Revenue Code have been satisfied. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

The government bears the initial burden of proving that the four Powell requirements have been satisfied. *United States v. Texas Heart Inst.*, 755 F.2d 469, 474 (5th Cir. 1985). Once the government makes the required Powell showing, the burden then shifts to the party resisting the summonses. *Powell*, 379 U.S. at 58 (quoting Reisman v. Caplin, 375 U.S. 440, 449 (1964)). In a summons enforcement proceeding, the recipient may challenge the IRS's petition on any appropriate ground, including any one of the Powell factors. *U.S. v. Clarke*, 573 U.S. 248, 250 (2014) (quotation omitted); see also*, United States v. Freedom Church*, 613 F.2d 316, 319 (1st Cir. 1979).

The government's burden is "slight" and may be satisfied by a sworn declaration of the investigating agent. Once the government makes this prima facie showing, the burden shifts to the respondent to demonstrate that enforcement would be improper— for example, because one of the Powell factors has not been met, because the summons is overbroad or unduly burdensome, or because it was issued in bad faith. The respondent must do more than make conclusory allegations; he must "disprove the

4

actual existence of a valid civil tax determination or collection purpose." Powell, 379 U.S. at 58; see also *United States v. Clarke*, 573 U.S. 248, 254–55 (2014).

The Court's role is limited. It does not adjudicate the taxpayer's underlying liability or the correctness of the IRS's theories. Rather, the Court asks only whether the government has met the *Powell* standard and, if so, whether the respondent has carried his heavy burden to show that enforcement would be an abuse of the Court's process.

*B. The Government's Prima Facie Showing[1]*

As noted above United States provides the Second Declaration of Revenue Agent Elizabeth Walker and the two attached summonses in support of the Petition to Enforce. (Doc. 24, Ex. 1, Walker Decl).  Upon close inspection, the undersigned finds that through Agent Walker's declarations and the petition, the United States has satisfied its initial burden under *Powell*.

*1. Legitimate purpose.* The record reflects that the IRS is conducting an investigation into Brook-Hollow's deferred legal fee programs to determine whether Brook-Hollow is subject to penalties under § 6700. That is a civil tax-determination purpose explicitly authorized by § 7602.

---

[1] Respondent argues that Petitioner has not established that the Court has jurisdiction to hear this matter as the pleadings, as a whole, do not make clear that enforcement is sought against Brook Hollow Capital and Brook Hollow Financial—the parties to whom the summonses were addressed. *See Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973). However, Respondent contends that Petitioner's pleadings largely indicate that enforcement is sought against Tate Johnson personally. Petitioner notes that the "caption of a complaint is not part of the statement of claims against any alleged defendants, but is chiefly for a court's administrative convenience for identifying the case." *Church v. City of Cleveland*, 2010 WL 4883433, at *3 (N.D. Ohio Oct. 26, 2010), report and recommendation adopted, 2010 WL 4901739 (N.D. Ohio Nov. 23, 2010). The "determination of whether a defendant is properly in the case depends upon the allegations in the body of the complaint." *Eberhard v. Old Republic Nat'l Title Ins.*, 2013 WL 12293449, at *5 (N.D. Ohio Sept. 13, 2013) (collecting cases). Here, the summonses themselves identify to whom the summonses are issued and what documents are sought. The Petition, and the accompanying declaration (and the second declaration of Revenue Agent Walker) establish that the IRS properly issued these summonses to Johnson, as president and partnership representative of Brook-Hollow, to obtain Brook-Hollow's records.  As such, Respondent's contention in this regard is not well-taken.

5

*2. Relevance*. The summonses seek documents and records concerning Brook-Hollow's deferred fee structures, the law firms that have participated in those structures, and the related financial arrangements. On their face, these categories are reasonably calculated to shed light on how Brook-Hollow's programs operate, how they are marketed, and how income is treated for tax purposes. The relevance standard in the summons context is broad: information is relevant if it "might throw light upon the correctness" of the return or liability under investigation. *Powell,* 379 U.S. at 57. The requested information easily meets that standard.

*3. Not already in the IRS's possession.* Agent Walker avers that the IRS does not possess the requested transactional and client-specific documents, and that the earlier IDR production did not include such materials. Respondent, however, argues that the IRS already possesses some or many of the materials sought, particularly through third-party summons responses from Brook Hollow clients. As such, Respondent contends that Petitioner does not satisfy *Powell's* requirement that the summons seek information not already in the Government's possession.

Namely, Respondent is unaware of the full set of documents possessed by Petitioner, however, Respondent contends that the IRS at least has some documents possibly responsive to requests 4, 7, 9, 14, 15, and 16 in the narrowed summonses. Respondent also asserts it produced 1,287 pages of documents in response to pre-summons IDR, and as such Petitioner is in possession of responsive documents. However, the IRS issued the summonses only after it believed that Brook-Hollow did not fully comply with the IDRs.

Furthermore, Petitioner asserts that the IRS is not in possession of the documents it seeks, as explained in the second declaration of Revenue Agent Walker. In light of the foregoing, the undesigned finds that this element of the *Powell* test is satisfied.

*4. Administrative steps*. Agent Walker further attests that the IRS complied with all administrative steps required by the Code, including proper service of the summonses and provision of any required notices. (Doc. 24, Ex. 1, Second Walker Decl. ¶¶ 1, 6, 9).

Accordingly, the undersigned finds that the United States has made its *prima facie* showing under *Powell.*

**C. Respondent's Objections**

Because the government has met its initial burden, the burden shifts to Respondent to demonstrate that enforcement of the summonses would be improper. Respondent asserts, *inter alia,* that the Notice of Narrowed Summons is deficient in the following respects:

a. It proposes no timeline for responding to the summonses.

b. It does not reflect the parties' agreement that Respondent may satisfy certain requests by preparing lists.

c. It does not fully reflect the parties' agreement that Respondent may satisfy requests for books and records exclusively by producing Quick Books files.

d. The language of several requests remains sufficiently unclear that, even if the summonses were enforced based on the Notice of Narrowed Summons, the parties will likely require court intervention to clarify the meaning of the summonses.

e. For certain requests, no responsive documents exist; therefore, enforcement of such requests remains impossible. (See Doc. 21 at 3).

Notably, even as narrowed, Respondent further contends that certain requests sweep too broadly, seek information that is not relevant to the § 6700 investigation, or effectively require Brook-Hollow to reconstruct the IRS's case for it. Upon careful consideration, the undersigned finds the Narrowed Summons is enforceable as outlined below.

### 1. *Requests 1, 2, 3, 12*

Respondent asserts that the Court should not enforce Requests 1, 2, 3 and 12 because they require Respondent "identify" certain parties. Respondent argues that requiring it to create documents not in existence at the time the summonses were issued, i.e., (an action to create a document that did not exist before), exceeds the IRS's authority to "examine any books, papers, records, or other data" pursuant to 26 U.S.C. § 7602. *United States v. Toyota Motor* Corp., 569 F. Supp. 1158, 1161 (C.D. Cal. 1983) ("Court cannot compel the production of nonexistent documents") (citing *United States v. Asay,* 614 F.2d 655 (9th Cir.1980)); see also Internal Revenue Manual 5.17.6.1.1 ("A summons cannot require a witness to prepare or create documents…that do not currently exist").

Petitioner, however, contends that the narrowed summons does not require Respondent to create documents in order to identify certain parties. Rather, the summonses ask Respondent to produce documents that identify certain individuals or entities. Interestingly, Respondent noted that it offered to prepare lists for the IRS in lieu of negative responses to these requests as part of its good faith effort to reach

8

mutually agreeable solutions and avoid further court intervention.  Petitioner purportedly rejected the offer and instead unilaterally filed its Notice of Narrowed Summonses.

The undersigned finds that Respondent may respond to this request by producing documents that identify certain individuals or entities or by creating a listing identifying the same.  If a list is created, counsel must provide a declaration attesting to the accuracy of the list. [2]

*2. Requests 4, 7*

Respondent further asserts that the Court should further decline to enforce Requests 4 and 7. Request 4 states that it seeks "All contracts, agreements, and engagement letters, involving the Promoter or any other entity/person, pertaining to a Deferred Legal Fee program." Request 7 states that it seeks "All agreements and other documents entered into by the Promoter, client, vendor, or other person, involved with or related to a Deferred Legal Fee Program," including (but not limited to) a list of example document types. Respondent asserts that these requests seem to both seek largely the same set of documents: any and all agreements entered into by Brook Hollow Capital or Brook Hollow Financial.

However, such requests targets solicitors and promoters, the exact category § 6700 is designed to regulate.  To the extent that the responsive documents are duplicative, Respondent shall so indicate.

*3. Requests 19, 20*

Respondent also asserts that the Court should decline to enforce Requests 19 and 20 because no responsive documents exist within the possession, custody, or

---

[2] Respondent also notes that the only documents responsive to Request 16 in the Notice of Narrowed Summonses are QuickBooks data files.

control of Brook Hollow Financial or Book Hollow Capital.  In summons enforcement proceedings, rather than moving to compel production of these documents, the Internal Revenue Service will typically bring a contempt proceeding against the summonsed party. In such a proceeding, pursuant to *United States v. Rylander*, 460 U.S. 752 (1983), the summonsed party is only permitted to raise lack of possession as a defense if he has raised that defense at the enforcement stage. Enforcing these requests at this stage invites such a future contempt proceeding, which would result in the unnecessary use of judicial resources.  Instead, Respondent contends it can provide a declaration to support the assertion that no such responsive documents exist.

Notably, the Supreme Court has made clear, a summons enforcement proceeding is not the forum to contest the existence or nonexistence of responsive records. *United States v. Rylander*, 460 U.S. 752, 757–58 (1983). The IRS is entitled to test Respondents' assertion, and bare statements of nonexistence do not defeat enforcement. Id.

However, to the extent that responsive documents do not exist, Respondent may comply through sworn declarations outlining their efforts in conducting a diligent search.

*4. Interpretation of Requests and Fact-Finding*

Respondent contends that many of the requests, even as narrowed, are so broad and vague as to seek an indeterminable range of documents. Respondent contends that it sought interpretations of what each summons requested from Petitioner, however, Petitioner has failed to provide any feedback.  As such, Respondent asks the Court to provide "more defined meanings" of certain requests. (See Doc. 2, Ex.1, Appendix 1). Along those same lines, Respondent also asks the Court to make findings

10

of fact to eliminate any jurisdictional questions and clarify the vast ambiguities in the record.  (See Doc. 22 at 10-12). Respondent's requests are not well-taken.

As noted by Petitioner, the summonses specify what documents they seek. They define the relevant terms and limit the scope to documents related to the "Deferred Legal Fee Program," defined as "any service you provided or were engaged to provide, relating to transactions and arrangements that purport to defer the receipt of a law firm's fees, payable out of the settlement amount negotiated by the law firm on behalf of its client, as well as any prior or similar programs or strategies." (See Doc. 24, Ex. 1 and 2 at B. 12.)

Respondent shall respond to the requests based on its own interpretation of what the request is seeking as specified by the summons. Findings of fact by the Court are unwarranted.

### III. Conclusion

Accordingly, the undersigned finds that the Petition to Enforce the IRS Summons is **GRANTED as follows**

1. The United States' Notice of Narrowed Summonses (See Doc. 19) are **ENFORCED** as modified by this Order;

2. Respondent shall produce all non-privileged documents responsive to the narrowed summonses within **90 days** of the date of this order; and

3. To the extent Respondent withholds documents on the basis of attorney-client privilege, work-product protection, or other recognized privilege, Respondent shall provide to the United States a privilege log that identifies the withheld documents and states the basis for the asserted privilege.

**IT IS SO ORDERED.**

_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Chief Magistrate Judge